IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CARL RECHTENBACH, on behalf of
Himself and all others similarly situated,

       **Plaintiff,**

v.                                              No. CIV 00-471 JP/LCS

AMERICA ONLINE, INC., a
Delaware Corporation,

       **Defendant.**

## MEMORANDUM OPINION

On April 10, 2000 Plaintiff filed a Motion to Remand, (Doc. No. 16).[1] Having reviewed the briefs and the applicable law, I conclude that the Plaintiff's motion should be granted.

## BACKGROUND

Plaintiff Carl Rechtenbach filed this class-action lawsuit in state court on behalf of himself and all other persons similarly situated. Plaintiff alleges that Defendant America Online, Inc. ("AOL"), an Internet Service Provider, failed to disclose to Plaintiff and other class members that the use of AOL 5.0 software would "unnecessarily customize the host system's communications configuration and settings such as to interfere with any non-AOL communications software and service." (Compl. at ¶ 5.) In other words, Plaintiff claims that after installation of AOL 5.0, many

---

[1] This motion was actually served on Defendant on April 10, 2000 and was not filed with the Court until May 5, 2000 when it was filed as part of a motion packet in conformance with D.N.M.LR-Civ. 7.3.

users are unable to connect with other Internet Service Providers because AOL 5.0 reconfigures their computers. Plaintiff's complaint alleges state law claims for violation of the New Mexico Unfair Trade Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*, and for attempting to monopolize trade or commerce in this state in violation of N.M. Stat. Ann. § 57-1-2. Plaintiff's complaint seeks an order certifying the class, consequential and incidental damages, treble damages, attorneys' fees, expert-witness fees, pre-judgment and post-judgment interest, and an order prohibiting Defendant from marketing AOL 5.0 software and otherwise engaging in unfair trade practices. Plaintiff's complaint specifically alleges that the amount in controversy as to each plaintiff is less than $75,000. (Compl. at ¶ 18.)

On April 3, 2000 Defendant removed this action to the United States District Court for the District of New Mexico, basing jurisdiction on diversity of citizenship. On April 11, 2000 Defendant filed a notice that it has requested that the Multi-District Litigation Panel ("MDL panel") transfer this and other related matters to a single court for pretrial proceedings. The MDL panel apparently has scheduled a hearing on the pending motion to transfer on May 19, 2000. (Resp. at 4.)

**LEGAL STANDARD**

Federal court jurisdiction is to be strictly construed. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941). "[T]here is a presumption against removal jurisdiction." *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir.) (citation omitted), *cert. denied*, 516 U.S. 863 (1995). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citation omitted). The removing party bears the burden of establishing in the Notice of Removal the underlying facts

2

establishing that the amount in controversy exceeds $ 75,000.00. *See Laughlin*, 50 F.3d at 873.

## ANALYSIS

In its motion to remand, Plaintiff seeks an order remanding this case to state district court on the ground that the amount in controversy is less than $75,000 and this Court therefore lacks subject matter jurisdiction under the diversity statute. Plaintiff also demands costs and attorneys' fees for improper removal. Defendant argues that this Court should stay proceedings until the MDL panel has ruled on its motion to transfer. Defendant further argues that if this court does rule on the motion to remand, it should deny the motion because this Court has subject matter jurisdiction.

### **Stay of Proceedings**

Defendant urges this court to stay all proceedings pending the MDL panel's ruling on a motion to consolidate and transfer this and other related matters pending in federal district courts across the country.[2] (Resp. at 4.) Some case law supports the proposition that a court confronted with a motion to remand should defer ruling on it until the MDL panel has had the opportunity to transfer the case to a single district court that can then rule on all jurisdictional challenges and motions to remand in the cases before it. *See In re Ivy*, 901 F.2d 7, 9 (2nd Cir. 1990). In *In re Ivy*, the Second Circuit held that "the MDL panel has jurisdiction to transfer a case in which a jurisdictional objection is pending" and that the transferee court can then rule on the jurisdictional objections. *Id*. (citation omitted). In reaching this conclusion the Second Circuit reasoned that "[c]onsistency as well as economy" is served when a single court is able to resolve

---

[2] Defendant states that "[o]n April 10, 2000, AOL filed a Motion to Stay." (Resp. at 4.) While the parties are apparently in the process of briefing this Motion to Stay, it has not yet been filed with this Court.

similar jurisdictional challenges in hundreds or thousands of similar cases. *See id*.; *see also Valerio v. Albertson's, Inc.*, Civ. No. 97-1291 LH/LFG, slip op. at 2 (D.N.M. March 6, 1998) (citing *In re Ivy* and declining to rule on plaintiff's motion to remand pending action by the MDL panel on the defendant's motion to transfer).

Other cases have come to the opposite conclusion, reasoning that a district court has an affirmative obligation to determine whether it has subject matter jurisdiction over an action even if the MDL Panel is considering transferring the case to another federal district court. *See, e.g., Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F. Supp. 2d 1042, 1047-48 (D.Kan. 1999) (rejecting defendants' argument that the court should stay consideration of the plaintiffs' motion for remand until the MDL panel has decided the defendants' motion to consolidate similar actions); *Sherwood v. Microsoft Corp*., --- F. Supp. 2d --- , No. 3:99-1191, 2000 WL 272305, at * 2 (M.D.Tenn. Feb. 22, 2000) (stating that "[d]espite the pendency of multiple similar actions across the country, the Sixth Circuit has warned that a district court's first obligation is to determine whether the Court has subject matter jurisdiction because without such jurisdiction, there is not any action to transfer," and remanding action to state court) (citation omitted). In *Aetna*, the court noted that "a stay would not affect the law that applies to the present case and little would be gained by a stay of decision on the motion to remand." *Aetna*, 54 F. Supp. 2d at 1047. According to the *Aetna* court, "[n]o great judicial economy will be realized from a delay. The parties will not save time, for they have already briefed the remand issue. . . . For purposes of judicial economy, the jurisdictional issues should be resolved immediately." *Id*. at 1048.

In light of the Court's affirmative duty to determine whether it has subject matter

4

jurisdiction, the presumption against removal jurisdiction, and the fact the parties have already briefed the motion to remand, the Court concludes that Plaintiff's motion to remand should be resolved immediately rather than waiting for the MDL panel to rule on Defendant's motion to transfer.

**Motion to Remand**

*Defendant's Cost of Complying with Requested Injunctive Relief*

Defendant argues that the amount-in-controversy may be established by looking at the cost to Defendant of complying with Plaintiff's requested injunctive relief because the class members assert a common and undivided right. In support of this argument, Defendant cites several cases, including *Snyder v. Harris*, 394 U.S. 332, 335 (1969) and *Justice v. Atchison, Topeka & Santa Fe Ry. Co.*, 927 F.2d 503 (10th Cir. 1991). To establish that its cost of complying with the requested injunctive relief exceeds $75,000, Defendant submitted the affidavit of its Assistant General Counsel, Laura E. Jehl. According to the affidavit, it will cost Defendant more than $75,000 to comply with Plaintiff's requested injunctive relief because Defendant will incur the "costs associated with the creation and dissemination of the AOL 5.0 software, the additional costs of creating and disseminating a different version of the software, and the costs associated with conducting an information campaign." (Ex. A to Resp.; Notice of Removal at ¶ 8.)

When class members bring claims that are separate and distinct, they cannot be aggregated. *Lonnquist v. J.C. Penney Co.*, 421 F.2d 597, 599 (10th Cir. 1970); *see also Aetna*, 54 F. Supp. 2d at 1048. If the claims are not aggregated, the Court cannot "look to total detriment" to the defendant of complying with injunctive relief when considering whether the

amount-in-controversy has been satisfied. *Lonnquist*, 421 F.2d at 599. "The threshold question is aggregation, and it must be resolved affirmatively before total detriment can be considered." *Id*. Aggregation is permitted, however, when individual class members seek to "enforce a single title or right in which they have a common and undivided interest." *Snyder*, 394 U.S. at 335.

Thus, the first issue to be determined is whether the class members in this case have a common and undivided interest in obtaining the requested injunctive relief or whether they have separate and distinct claims for injunctive relief. Other courts have established factors for making this determination:

> To establish a common and undivided interest, defendants must show that the claims of the putative class members derive from rights which they hold in group status. *Potrero Hill Community Action Comm. v. Housing Auth. of San Francisco*, 410 F.2d 974, 978 (9th Cir.1969); *Pierson v. Source Perrier, S.A.*, 848 F.Supp. 1186, 1188 (E.D.Pa.1994). In other words, a class has a common and undivided interest "where only the class as a whole is entitled to the relief requested." *Loizon v. SMH Societe Suisse de Microelectronics, Et Horologerie S.A.*, 950 F. Supp. 250, 253 (N.D.Ill.1996). Even if plaintiff's claims present common questions of law and fact, as they must if they are to be certified as a class, it does not necessarily mean that their rights are held in group status. *United States v. Southern Pac. Transp. Co.*, 543 F.2d 676, 683 (9th Cir.1976). Aggregation is not allowed where each class member claims an individual injury, such as a unique amount, that in theory must be proved separately. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1050 n. 14 (3d Cir.1993), *cert. denied* 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373.

*Amundson & Associates Art Studio, Ltd. v. National Council on Compensation Ins., Inc.*, 977 F. Supp 1116, 1124 (D.Kan. 1997); *see also Aetna*, 54 F. Supp. 2d at 1048 (quoting *Amundson*).

Here, Defendant argues that the class members' claims are common and undivided for essentially three reasons: 1.) Defendant has no interest in how the requested relief is distributed

among class members; 2.) none of the class members could obtain injunctive relief against marketing and distributing AOL 5.0 without affecting the rights of all other class members and even those who were not class members; and 3.) the asserted right to enjoin marketing and distribution of AOL 5.0 is a right "common" to all class members. These arguments are not persuasive.

As in *Aetna*, Defendant has merely noted that the class members seek injunctive relief that is not specific to individual class members. *See id*. at 1051. This does not establish that the claims of individual class members are collective in nature. *See id*. In determining whether the class members' claims are common and undivided, the Court "must look at the nature of the *right asserted*, not the nature of the relief requested." *Id*. (emphasis added). Here, the class is composed of "all AOL 5.0 users in the State of New Mexico." (Compl. at ¶ 1) The class members base their claims for injunctive relief on Defendant's allegedly unlawful and unfair trade practices and on Defendant's alleged attempted monopolization of the Internet access market. Like the class members' claims in *Aetna*, "no group right or interest forms the basis for the requested injunctive relief. Class members did not possess rights in common before they filed suit, and they could have sued individually to secure the injunctive relief which they request." *Id*. (citation omitted); *see also Amundson*, 977 F. Supp. at 1125.

This case is somewhat similar to *Cadigan v. Transamerica Occidental Life Ins. Co*., Civ. No. 99-1406 LFG/KBM slip op. (D.N.M. Feb. 22, 2000). In *Cadigan* the plaintiff filed a class action lawsuit in state court against the defendant for allegedly failing to disclose the annual percentage rate and/or annual rate of interest of the additional premium charged to policyholders who chose to pay their premiums in installments over the policy year rather than in one lump sum.

The plaintiff sought injunctive relief, which would have required the defendant to provide written disclosure of rates of interest and finance charges. *See id*. at 2-3. Thus, as in this case, the requested injunctive relief would have protected people who were not members of the class. The court nevertheless concluded that the claims for injunctive relief were not "common and undivided" and that the court should therefore not consider the cost to the defendant of complying with the injunctive relief when determining the amount-in-controversy. *See id*. at 4.

As in *Aetna*, *Amundson*, and *Cadigan*, the relevant factors for determining whether the class members' claims are common and undivided dictate the conclusion that the class members' claims are separate and distinct. Therefore, it is inappropriate for this Court to measure the amount in controversy by looking at the total cost to Defendant of complying with the class members' requested injunctive relief.

*Plaintiff's claim for injunctive relief*

Defendant contends that the amount-in-controversy requirement is established because the case has not yet been certified as a class action and, therefore, the entire cost of complying with injunctive relief--which will exceeded $75,000--must be attributed to the sole named Plaintiff. This argument is also unpersuasive. To accept such an argument would require federal district courts to determine class certification before determining whether the court had subject matter jurisdiction over a class action based on diversity of citizenship.

This argument also fails because Defendant has not met its burden of establishing in its Notice of Removal the underlying facts that would demonstrate the existence of the requisite amount-in-controversy. *See Hughes v. E-Z Serve Petroleum Marketing Co.*, 932 F. Supp. 266, 268 (N.D. Okla. 1996) ("Where the face of the petition does not affirmatively establish the

8

requisite amount in controversy, the plain language of *Laughlin* requires a removing defendant to set forth, in the Notice of Removal, not only the defendant's good faith belief that the amount in controversy exceeds $50,000, but also underlying facts in support of the defendant's assertion."). The Notice of Removal merely states, "[t]he Plaintiff seeks to enjoin the Defendant from marketing its AOL 5.0 software to its more than 20 million subscribers and from engaging in any allegedly deceptive, unfair, or anti-competitive practice alleged in the Complaint. The value of such injunctive relief greatly exceeds $75,000." (Notice at ¶ 8.) This conclusory allegation does not establish that the cost of complying with the requested injunctive relief will exceed $75,000.

*Plaintiff's claim for attorneys' fees*

Where reasonable attorneys' fees are a part of a statutory action and have been requested by a plaintiff, their value will be assessed as part of the amount in controversy. *See Missouri State Life Ins. v. Jones*, 290 U.S. 199 (1933). Defendant argues that the amount-in-controversy requirement is established because the Plaintiff's award of attorneys' fees under the New Mexico Unfair Trade Practices Act, "particularly when considered in conjunction with the cost to AOL of the injunctive relief sought by the Plaintiff," will exceed $75,000.[3] Defendant sets forth the apparently novel argument that under the NMUPA, N.M. Stat. Ann. § 57-12-10(C), only a *named* plaintiff who furthers the public interest is entitled to an award of attorneys' fees and costs. *See Howard v. Globe Life Ins. Co.*, 973 F. Supp. 1412, 1419-20 (N.D.Fla. 1996) (holding that attorneys' fees should be aggregated in class action lawsuit based on state statute providing for fees to be paid directly to plaintiffs' attorney).

---

[3] Defendant does not argue that aggregation of attorneys' fees satisfies the amount-in-controversy requirement; rather, Defendant argues only that the attorneys' fees for the named Plaintiff in this case satisfies the amount-in-controversy requirement. (Resp. at 10-11.)

9

Section 57-12-10 is titled "Private Remedies." It states in part:

> A. A person likely to be damaged by an unfair or deceptive trade practice or by an unconscionable trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. . . .
> B. Any person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater. . . .
> C. The court shall award attorneys' fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if he prevails.

Defendant has failed to cite any case interpreting Section 57-12-10 to mean that only a named plaintiff in a class action lawsuit can recover attorneys' fees. The plain language of the statute does not prohibit a court from awarding attorneys' fees to unnamed class members. Therefore, "the total amount of fees must be attributed pro rata to the individual class members, rather than being aggregated." 5 James WM. Moore et al., Moore's Federal Practice § 23.07[3][b][v]. Because the class is alleged to include thousands of people, the amount of attorneys' fees attributed to the individual class members will not exceed $75,000 each.

*Plaintiff's request for costs and attorneys' fees*

Plaintiff requests costs and attorneys' fees under 28 U.S.C. § 1447(c). This Court has discretion to award costs and attorneys' fees associated with an improper removal that was not attempted in good faith. *See Asten v. Southwestern Bell Tel. Co.*, 914 F. Supp. 430, 434 (D.Kan. 1996). The removal appears to have been attempted in good faith. Therefore, an award of costs and attorneys' fees is not warranted.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand should be GRANTED, but Plaintiff's request for costs and attorneys' fees should be DENIED.

_____
UNITED STATES DISTRICT JUDGE